*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-213

SEPTEMBER TERM, 2015

In re M.T., R.T. and D.T., Juveniles } APPEALED FROM:
}
} Superior Court, Franklin Unit,
} Family Division
}
} DOCKET NO. 131/132/133-10-11 Fr

Trial Judge: Howard E. VanBenthuysen

In the above-entitled cause, the Clerk will enter:

Father appeals from a family court judgment terminating his parental rights to the minors M.T., R.T., and D.T. Father contends the court's findings and conclusions concerning three of the four statutory best-interests criteria were inadequate. We affirm.

The record shows, and the court found, that the parents and children have been involved with the Department for Children and Families since 2007. The current proceeding commenced in October 2011, with the filing of a CHINS petition based on numerous reports of physical and emotional abuse, medical neglect, filth in the home, lack of supervision, and mother's mental health issues. The parents stipulated to an adjudication of CHINS in December 2011, and the children remained with them under a conditional care order until October 2013, when DCF obtained emergency custody based on deteriorating conditions in the home. The oldest child, M.T., was then nine years old. Her brothers R.T. and D.T. were eight and six years old, respectively. The children were placed in foster care, where they have since remained.

The initial case plan identified a goal of reunification and set forth an array of goals and services for the parents, including family time coaching during supervised visits with the children, mental health counseling, and meeting with service providers to discuss and develop ways to address the children's special needs, particularly those of the two younger boys who had been diagnosed with autism. In September 2014, a modified case plan was filed with a recommendation of termination of parental rights based on the parents' failure to comply with the plan of services and inability to understand or meet the children's needs.

The court held an evidentiary hearing in April 2015, and issued a written decision later that month. Among its extensive findings, the court noted that the case plan provided for parents to have several supervised visits with the children each week at the Northeastern Family Institute (NFI) with the assistance of family time coaches. The testimony of the family time coaches, which the court found to be credible and precise, described in detail the parents' inability to supervise and manage the children or attend to even their simplest needs, despite intensive coaching over an extended period of time. The problem was the most acute with the two younger boys, who exhibited very difficult and troubling behaviors, including profanity, explosive anger, physical aggression, and sexualized behaviors. The family time coaches

observed that the visits became disorganized and chaotic and that father was unable or unwilling to implement their suggestions, did not recognize the children's needs, and attributed their behavioral problems to DCF. They observed that father's visits made the older girl uncomfortable, that she remained quiet and withdrawn, and that she exhibited "parentified behaviors," intervening to help the parents on certain basic parenting tasks for her younger brothers.

A social worker who worked with the parents initially observed that the smell of feces, urine, and smoke in the parents' home was overwhelming, that there was little food, and that the beds were filthy. Their current DCF worker described father has having gained no insight into the needs of the children, and as unwilling to accept any responsibility for their problems. Father's testimony corroborated these observations. He testified that the children's behavioral problems were the result of disruptions caused by DCF, denied that the children engaged in inappropriate sexualized behaviors, and attributed the boys' special needs to their being angry and stubborn.

The children's current foster parents testified to the children's adjustment to their new homes and communities. M.T.'s foster mother testified that M.T. did not have basic hygiene skills when she first came into foster care, but that these shortcomings had improved, and that she was becoming more actively engaged in school and extracurricular activities. The younger boys had extensive developmental deficits when they came into foster care which had also improved, but they continued to exhibit sexualized behaviors, physical aggression, and other challenging behaviors.

The court found a substantial change of circumstances based on stagnation in the parents' ability to care for the children, observing that, over the course of eighteen months, they had not made any substantial progress in compliance with the case plan, and that their prospects for completion of the plan were remote. Turning to the bests interests of the children, the court observed that the children had a strong need for permanency; that the younger two boys in particular had a "powerful need for a very high level of services"; and that it was clear from their lack of progress over time that parents could not "meet these needs in the foreseeable future." PC 15 The court specifically found that parents "lack the insight" required to meet the children's needs, that father in particular had been resistant to services, and that neither parent could provide "the stability, routine, safety and special care that all three children require." Accordingly, the court concluded that neither parent could resume parental responsibilities within a reasonable time, and thus granted the petition to terminate their parental rights. This appeal by father followed.

Father contends the court's findings and conclusions failed to provide "an adequate explanation of what it decided and how its decision was reached" absent express consideration of three of the four statutory best-interests criteria, including in particular the parents' relationship with the children and the role they had played in their lives. 33 V.S.A. § 5114(a)(1)-(4) (setting forth statutory criteria "the Court shall consider" in determining best interests of the child).

We agree that it is better practice by far for the trial court to explicitly address the statutory criteria in light of its findings. Nevertheless, the trial court here left no doubt that it had considered the statutory criteria in light of the facts, explaining: "The Court has considered the best interests of [the children] in the context of the factual record here, and has reflected upon the statutory factors. See 33 V.S.A. §§ 5113, 5114."

2

Furthermore, the court's thorough and extensive discussion left no doubt as to its reasoning with respect to these factors. Indeed, as summarized earlier, the trial court's focus was almost exclusively on the nature and quality of the parents' relationship and interactions with the children, and the children's subsequent adjustment to foster care. That discussion noted father's demonstrated inability to understand, much less address, the children's physical and emotional deprivations, troubled behaviors, and special needs, or to accept his role in creating their difficult circumstances—despite the substantial efforts of social workers and parent educators over the course of several years. The court's findings show plainly that father's interactions with the children were not generally constructive or positive, and that his role in providing emotional support was minimal. The court also found that the oldest child, M.K., had made substantial progress in foster care, while the younger boys—while still challenging—had also shown improvement. Accordingly, the basis of the court's reasoning and decision is clear, and we discern no ground to disturb its judgment. See E.J.R. v. Young, 162 Vt. 219, 225 (1994) (court's findings should indicate "what was decided and how the decision was reached." (quotation omitted)).

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

3